# Elder *v.* Hamilton.

*Married women—Acknowledgment—Recording act—Evidence—Duress.*

In an action of ejectment by a married woman against the purchaser of land at sheriff's sale, it is proper to exclude an offer by plaintiff to the effect that the land formerly belonged to her; that under duress she executed and acknowledged a deed for the land to a church, which deed was recorded; that subsequently the church conveyed the land to a third person who executed two mortgages upon it, the second of which was held by the defendant; that the sheriff's sale was under the first mortgage;

that the representative of the church, the grantee of the church, and the first mortgagee had knowledge of the duress, without any offer to prove that the second mortgagee, the purchaser at the sheriff's sale, had notice of the fraud before the second mortgage was executed.

Argued April 18, 1900. Appeal, No. 431, Jan. T., 1899, by plaintiff, from judgment of C. P. Blair Co., June T., 1897, No. 59, on verdict for defendant, in case of Keziah Elder v. R. A. Hamilton and Teutonia Building & Loan Association. By GREEN, C. J., McCOLLUM, DEAN, BROWN and MESTREZAT, JJ. Affirmed.

Ejectment for a tract of land in the city Altoona. Before BELL, P. J.

At the trial it appeared that on September 17, 1894, plaintiff executed and acknowledged a deed for the land in suit to the board of church extension of the United Presbyterian Church of North America. On May 7, 1894, the board of church extensions conveyed the land to R. A. Hamilton. On January 23, 1895, Hamilton executed a mortgage of the land to H. H. Stone for $2,000. On January 31, 1895, Hamilton executed a second mortgage of the land to the Teutonia Building & Loan Association for $600. All of these deeds and mortgages were duly recorded. In 1897, Stone entered judgment upon the bond accompanying his mortgage, and at the ensuing sheriff's sale, the Teutonia Building & Loan Association bought in the land.

The plaintiff offered to prove by her own testimony that she is the wife of Thomas Elder and the grantor in the deed offered in evidence by the defendant to the board of church extension of the United Presbyterian Church of North America and was the owner in her own right of the property therein described and for a part of which this suit is brought; that said deed was not signed by her voluntarily and of her own free will and accord but that she was coerced, compelled and threatened into signing the same by her husband, Thomas Elder, who threatened to kill her if she did not sign the deed; that R. A. Hamilton acted as agent for the board of church extension of the United Presbyterian Church of North America, and D. Clare Good, Esq., acted as attorney. Both of these parties were fully aware of the witness's reluctance to signing the deed, and frequently importuned

her for that purpose, and threatened to bring suit against her husband and herself unless she signed and delivered the deed; that under the combined influence of her husband and these people she consented to sign the deed, but expressly told them at the time that she was signing the same, that it was not of her own free will and that she did not want to sign the deed; that when she appeared before the notary public to acknowledge the same, he asked her, "Is this your deed?" She replied, "This is the deed I signed, but I was forced to sign it. It wasn't my deed." Thomas Elder, her husband, was present, standing by, within sight and hearing. D. Clare Good, the attorney, and R. A. Hamilton aforesaid were also within hearing, as was also Edmund Shaw, Esq., her own attorney; they were all fully aware that she was forced and coerced into signing and acknowledging the deed by their intimidation and the threats of the husband.

This evidence is to be corroborated by other witnesses, to be followed by proof that the mortgagee, Harry Stone, had knowledge of these facts, and further, that the defendant in this case, who purchased at the sale of said mortgage, also had notice of this defense prior to said purchase.

Mr. Dively: The offer on the part of the plaintiff to prove that the officer who took the acknowledgment of Mrs. Elder did not examine her separate and apart from her husband is objected to as irrelevant and incompetent for the reason that the act of the officer is a judicial act, and oral testimony cannot contradict the testimony of a notary public as against the bona fide purchaser without notice; an offer can only be contradicted as against a purchaser who was consenting to the fraud or duress.

The Court: The objection is sustained. [1]

Mr. Dively offered mortgage book, volume 45, page 650, mortgage from R. A. Hamilton to the Teutonia Loan and Building Association, made January 1, 1895, penal sum, $1,200, real debt $600, recorded on February 2, 1895, in the recorder's office, etc.

Objected to at this time for the following reasons:

1. It ought to have been put in evidence, if relevant, as part of the defendant's case.

2. This mortgage is irrelevant in these proceedings; it is a second mortgage and the defendant did not claim title to this property under this mortgage, but on the contrary claimed title

to the property under the mortgage given to Harry Stone by R. A. Hamilton, and upon which the sale was made ; it is therefore objected to as being irrelevant.

The Court: The objection is overruled and an exception noted for the plaintiff's counsel and bill sealed. [2]

The Court: As to the first objection to the offer of the mortgage in question, it may be sufficient to say that that is a matter within the discretion of the court as to the order in which the proof is offered. And as to the opening up of the defendants' case, the circumstances under which the defendants' case was opened up are about as follows: After the defendants had closed their testimony, the plaintiff made an offer of evidence which is on record, and the defendants made an objection to said offer of the plaintiff, wherein it was set out that the second mortgagees of R. A. Hamilton were entitled to the benefit of the recording act as to such second mortgagees. Counsel for the plaintiff, at the time, denied the existence of such a second mortgage ; and I myself suggested that it was not in evidence yet, and it might be erroneous for the court to rule on the effect of the second mortgage, as it was not in evidence ; and upon the counsel for the defendant, stating that there was such a second mortgage, I allowed the defendants to open up their testimony and let it in, so that the court could rule squarely on the legal question presented. And in allowing this second mortgage to be admitted in evidence, I said to the attorneys for the plaintiff that they could amend their offer, if they desired to offer proof that the Teutonia Building and Loan Association, before they took the second mortgage, had notice of the alleged illegal acknowledgment of Mrs. Elder's deed ; but the counsel for the plaintiff said they had no proof that the Teutonia Building and Loan Association had any notice of the illegal acknowledgment, before giving this order. So much for my ruling on the admission of this second mortgage of R. A. Hamilton to the Teutonia Building and Loan Association, out of order.

Then we come to consider the plaintiff's offer of proof. Assuming that the plaintiff can prove what the offer contains —and in this ruling we are bound to assume that they can prove it—and the case would stand this way ; Mrs. Elder executed a deed to the Presbyterian board which, as to her, was

void because of the illegal acknowledgment, and was void as regards all persons who had notice of the defective or illegal acknowledgment. Now we must assume, in accordance with the terms of the offer, that R A. Hamilton, the grantee of the Presbyterian board, had notice. We must likewise assume that H. H. Stone, the first mortgagee, had notice. And as to Hamilton and Stone, Mrs. Elder could object to her own deed, but after Stone had placed his mortgage on record, to wit: after February 2, 1895, the Teutonia Building and Loan Association put the second mortgage on record. If they had no notice of any irregularity or illegality by Mrs. Elder, as to them, her deed to the Presbyterian board is a good deed, because they have put their mortgage on record, and there is a chain of paper title on record on which they have relied. Then an execution is issued on the Stone first mortgage, and the Teutonia Building and Loan Association, the second mortgagee to protect their second mortgage, buy in the property for the sum of $2,600, as shown by the execution No. 65, March term, 1897, offered in evidence. The sheriff appropriates this amount to pay off the Stone mortgage in full and only appropriates the balance of $51.74 to the Teutonia Building and Loan Association. Now if we assume as we must in the ruling that the Teutonia Building and Loan Association had no notice prior to their purchase at the sheriff's sale, of the illegality or irregularity in the acknowledgment of the deed by Mrs. Elder to the Presbyterian board, it seems to me that being the second mortgagee, they are protected by the recording act. I am inclined to think—although I am by no means positive on that point and subsequent reflection may cause me to change my mind—but I am inclined to think that under such circumstances the Teutonia Building and Loan Association, having loaned their money on the faith of a recorded paper title without notice when they loaned their money and put their mortgage on record, are protected by the recording act to a certain extent; that the law would not compel them to lose the money which they paid on the Stone mortgage. Even if they had notice prior to such payment that there was some illegality in the Stone mortgage, or even if they had notice that the Stone mortgage was void, I am inclined to think, although I am by no means positive about it and may change my mind on that point,

but I am pretty well satisfied that the law would not allow the second mortgagees now in possession to be put out of possession on ejectment by Mrs. Elder, under the circumstances as the offer shows them to exist. The mortgagee has a right to the possession of the mortgaged premises, and the mortgagee being in the possession of the mortgaged premises was entitled to possession of the same till the mortgagor paid off the debt and then he would have to surrender them, and the same rule would apply to the predecessor in title of the mortgagor.

Now, assuming everything to be proven that is offered to be proven in the offer of testimony made by the plaintiff's counsel here, we have the case of a mortgagee, to wit: the Teutonia Building and Loan Association, in possession and the predecessor in title of the mortgagor bringing a suit in ejectment against the Teutonia Building and Loan Association. What would equity dictate under the circumstances? Would it not dictate that before Mrs. Elder could put the Teutonia Building and Loan Association out of possession, she must tender to the Teutonia Building and Loan Association the amount of money which, in good faith, the defendants, without any notice or any complaint on her part, invested in this mortgage?

Now, there is no allegation that she has made any such tender, and, until she does make such a tender, I am inclined to think, or to put it stronger, I do think, that the defendants can remain in possession as mortgagees in possession. If we carry out the argument of the plaintiff's counsel to its legitimate effect, the second mortgage of the Teutonia Building and Loan Association was not divested by that sale, because, to carry out the argument of the plaintiff's counsel to its logical effect, that was a void sale, conveying no title. And if it was a void sale, it could not divest the second mortgage, and the only effect it would have, if the first mortgage was void, would be to make the second mortgage a first mortgage.

Mrs. Elder could have prevented this contingency, if her deed was fraudulently obtained from her, by promptly bringing a bill in equity for the cancellation of the deed which she made to the Presbyterian board; and when that bill in equity was once filed it would be notice to the world; and if she saw fit not to do so and run the risk of her grantee mortgaging the property, it does not lie in her mouth to complain as to this illegal

acknowledgment until she pays off, or tenders payment of the mortgage which was given in good faith without notice.

It seems to me that Mrs. Elder should tender to this Teutonia Building and Loan Association the money which they advanced without notice of her complaint as to the title, before she can bring suit.

The offer of the plaintiff is, therefore, rejected and a bill is sealed for the plaintiff.

The second mortgage, that of R. A. Hamilton to the Teutonia Building and Loan Association, is admitted and a bill sealed for the plaintiff.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.    Plaintiff appealed.

*Errors assigned* were (1, 2) ruling on evidence, quoting the bill of exceptions; (3) in giving binding instructions for defendant.

*Edmund Shaw*, with him *Thomas H. Greevy*, for appellant, cited McCandless v. Engle, 51 Pa. 309, Louden v. Blythe, 16 Pa. 532, Louden v. Blythe, 27 Pa. 22, Schrader v. Decker, 9 Pa. 14, Heeter v. Glasgow, 79 Pa. 79, and Carr v. Frick Coke Co., 170 Pa. 70.

*A. V. Dively*, for appellee, cited, Jamison v. Jamison, 3 Whart. 457, Hall v. Patterson, 51 Pa. 289, McCandless v. Engle, 51 Pa. 309, and Carr v. Frick Coke Co., 170 Pa. 70.

PER CURIAM, April 30, 1900:.

The views expressed by the learned court below in the rejection of the plaintiff when offered as a witness to prove the matters stated in the offer are entirely correct, and fully justified the exclusion of the witness.   The offer did not include proof of notice to the Teutonia Building and Loan Association of the invalidity of the acknowledgment of her deed to the church prior to its purchase of the property at the sheriff's sale, and hence the protection of the recording act was not removed. In these circumstances her testimony to establish the facts set forth in the offer was irrelevant and incompetent.   The assignments of error are dismissed.

Judgment affirmed.